Good morning, Your Honor. May it please the Court, Marion Tully for Anthony Massok, Appellant and Plaintiff. Unfortunately, we're here from another judgment from Judge Reel, but I think this one is a little easier for this Court to solve. This case, we had a seriously injured man who was deprived of his most valuable and serious constitutional right. That right to a jury trial was very important in this case because it was denied and the trial court then granted judgment as a matter of law. And we didn't have an opportunity even to put on all of our evidence to a jury. Respondent's brief doesn't argue the merits of the deprival of the constitutional right. They say, no harm, no foul. I'll address the issue of harmless error first and explain why, when this case is returned for proper jury trial, we need to also return it with all the evidence so that the judge can properly act as a gatekeeper and not the ultimate fact finder. There's a variety of harmless error standards, but when the Court is considering harmless error in the context of the denial of a right to jury trial, it looks at the evidence de novo and applies the standard that would apply to a summary judgment. That means all of the plaintiff's evidence is looked at in the light most favorable to the plaintiff. And this Court does not weigh the evidence. With or without the expert testimony in this case, there was substantial evidence to raise questions of fact on each of the plaintiff's three independent separate theories of liability. There was evidence of design defect under the consumer expectation test, the risk-benefit analysis, and the evidence of a failure to warn to provide reasonable warnings on the ladder for how to set the ladder up. Why wasn't there a reasonable warning in this case? If you look at the pictures of the ladder warnings that are contained in the record, you'll see that the ladder warning on the ladder shows the fly position in both the front and the back of the base of the ladder. Sure, but it has a Roman numeral on each one of them and directs you to read the right way to put it up, depending upon where the fly is. But that's not contained on the ladder itself. The ladder warning says that if it's a fly front ladder, it's 3100 series. But there's no evidence that this particular ladder was, I think it was a 3115 or a 3160, was that series. And the ladder picture itself has the fly in both positions. The plaintiff here had had some experience with extension ladders, and he had always had ladders that had the fly positioned in the back. See, that may be the problem. I mean, he didn't really read the warnings. It didn't matter a whole lot what the warning said, did it? I think that's a question for the jury. He did say that he did look at the warnings. He didn't read them at length. But I think that's the question. That's why we need a jury in this case. Some jurors will think it's reasonable to spend that much time looking at the warning and that the large part, the big picture of the warning was ambiguous. Some jurors may be the type of juror that reads all the fine print on everything every time it's used. But that emphasizes the reason that the jury's experience is brought to the courtroom. In this kind of a case, they're very important because we have objective, reasonable standards that need to be applied to the product defect. When you have one fact finder like the court, the court's common experience will be only one perspective. This judge may have felt that it was unreasonable to use the ladder in this manner. But if you have the debate of the jurors, they may go different ways. Well, if the test on the consumer expectation test, if I understand it correctly, it's like a reasonable consumer. Yes. It's an objective test. So in this particular case, what is it that a reasonable consumer would objectively expect? Would the consumer expect the ladder not to have the fly in the back? Or would the consumer expect the ladder to be level without regard to the angle that it was put up? In or without regard to whether it was front or back? Or would the reasonable consumer expect a coefficient of energy on the feet to work right? A coefficient of friction on the feet to work however the ladder was put up? Well, the objective consumer test in this case has the normal experience of the consumer in using ladders. And in this case, this was one of the only ladders on the market that had the fly in the opposite position. Well, which is why I'm sort of saying, is it your position here that the reasonable consumer would expect in this case that the fly could go either way or just in the front? I think that in this case, the consumer could feel that the fly could go in either place. But more importantly, a consumer would expect with a pivot of the cleat that regardless of whether the fly was in the front or the back, that the foot of the cleat would rest on the surface. Okay. Regardless of the angle and regardless of whether the fly is in front or the back, then your position is an ordinary reasonable consumer would objectively expect the cleats to level. Do I put it more or less right? More or less. I'm not saying, though, that if the angle of the ladder is at 30 degrees or something, a reasonable angle. In this case, we're talking a difference in the angle of 3 percent between what the ladder label says and what the expert says. Okay. But see, here's my real problem, and this is why this little colloquy is sort of trying to help me. My problem is how this test is even applicable to a situation like this, because I can understand how you can say if there's the absence of something. I mean, there's a negative. Then you can see why an ordinary reasonable consumer on a bus that turns wrong would expect to reach out and grab a handrail. The handrail isn't there, so it's kind of self-evident that there's a problem and that the problem caused the injury. Or if you don't have a seat belt at all, it's sort of self-evident that you're not going to be restrained, and if you're not restrained and you hurt yourself, why you hurt yourself. So my question here is I don't see how it's self-evident that this ladder was defective to an ordinary consumer. I think when the consumer looks at the ladder and sees that at the base of the leg of the ladder there is a foot that has a cleat and that foot has a range of motion, the purpose of the rubber foot is to rest and create friction with the surface. This pivot principle is present in many common devices. It works on door hinges. It's a range of motion that is created by the angle of the ladder and the surface of the ground. If the ladder didn't have a foot, if it just had a rubber base, it wouldn't matter, but the fact that it has a cleat that has a limited pivot is going to create a situation where very little contact with the surface comes if the ladder is not set up. If you look at that same consideration in the risk-benefit analysis, which didn't go to the jury either, it would seem to be a very small cost to change the pivot ratio compared to the very great risk that if the entire foot was not resting on the ground that the ladder would slide out. So the consumer would anticipate that the cleats were in contact regardless whether it was a fly back or fly forward, is that what you're saying? I think so. OK. I don't want to overcomplicate the problem any more than it is. But extension ladders also have as a feature they have. They have I don't know what you call them, things that are on springs that come out to prevent the extension from collapsing. Is that is that enter into this calculus at all? No, there was my my experiences. If you put the letter up the wrong way, you find that those things don't work properly. Are you an ordinary reasonable consumer? I'm a consumer, period. But that's not involved here. No, there was no evidence about that at all. But I think that the dialogue that we were having on what a reasonable consumer would expect shows the need to have jury trial in this case. These are matters of argument, the functioning, how the ladder functions and how other ladders function should be a matter of expert testimony. You see, I can understand that with respect to your cost benefit theory, but I don't understand it with respect to the ordinary reasonable consumer theory. Because there I don't think you can or need to have any kind of explanation. You can't have expert testimony, really. It's just got to be sort of self-evident, doesn't it? That's correct. But what's self-evident to one jury may not be self-evident to another. Okay. And let me ask you a different question. If I get it correctly, what the record shows with respect to causation is that he was on the ladder and felt it give way, basically. And that's the evidence of causation? No, there's quite a lot more evidence of causation. There's a mark on the roof where the ladder came down. There's pictures of that. There's his testimony that what he felt was something give way, but he did not feel anything tip. The cleat of the ladder shows a crack and wear in the area where it was resting on the concrete. Less wear on the other side of the cleat. So if there is a fracture on the cleat part that's resting on concrete, that could cause a slip out. Because what happens when the weight begins to come down with a small slip is the center of gravity changes and the ladder goes out. Now, that's the barest bones causation in this case. Even under the consumer expectation analysis, we were entitled to have the skilled expert testify on the causation factors for the dynamics of the slide out. So if you look at Mr. Paul's testimony on causation, he goes in great detail in the crack and the coefficient of friction and the test he had. And actually, Mr. Kwan did essentially the same kinds of tests, but in this case we didn't get to cross-examine him on the stand. But both experts could testify, and there's evidence in both experts' direct testimony on the causation issue. It's a question of the weight to be assigned to either expert. Now, we believe that the case should go back for jury trial, but we also believe it should go back with a fresh look at all the evidence. Because when the judge is looking at the case as a gatekeeper as opposed to a fact finder, the questions of relevancy and reliability are going to change. So we think that when he looks at the case with Mr. Paul as a skilled witness, which respondent has not even argued that he's not a skilled witness. Respondent argues only that he is not a qualified engineer and that he didn't do the right kinds of tests. We think those are issues of weight and not admissibility. If I have any time remaining, I'd like to reserve it. You have five minutes. Thank you. Then we'll hear from Mr. Hepworth. Good morning. James Hepworth on behalf of the appellees. I think there is, in my estimation, two questions that this Court needs to answer. The first is whether the District Court abused its discretion in excluding the testimony of the plaintiff's expert, Mr. David Paul. The second is whether the District Court erroneously granted the defendant's motion for judgment as a matter of law. The answers to both of these questions are no. The Court did not abuse its discretion in excluding the courted expert testimony and did not erroneously grant the motion for judgment. With respect to the expert testimony, the District Court excluded the testimony. I think it's clear from a reading of the record for two reasons. Number one, the District Court did not believe Mr. Paul was a qualified expert. And indeed, Mr. Paul himself acknowledged that he was not a materials expert. And yet, Mr. Paul proceeded to give opinions regarding materials on the record. From which the footpad and cleats were made, opining that there must have been a crack preexisting this injury, which might have propagated over time through fatigue. And that, I think, is one of the reasons why the District Court felt that Mr. Paul was not qualified. He admitted he was not a materials expert, yet gave an opinion which required that kind of an expertise. Second, the District Court felt that, apart from the qualifications, Mr. Paul's testimony was not reliable because of the methodology by which Mr. Paul went about forming his opinion. And in that instance, the District Court properly, I think, considered several of the factors that are set forth in Daubert and other cases and concluded that the testimony was not reliable. I think that was clearly within his discretion. Cases make clear that the court is to be given wide discretion in not only deciding what factors to apply, but in the result that is obtained from that. With the exclusion, the proper exclusion of Mr. Paul's testimony, the theory of the plaintiffs under the risk-benefit analysis fails because that requires expert testimony to show that the injury was caused by a defective design caused by the product. It's true that the second prong of the Barker analysis under the consumer, I guess it's the first prong, the consumer expectation test, does not require expert opinion. However, I think the court, the District Court, properly found here, relying on cases like Suley and Morrison, that this case was not a proper case for application of the consumer expectation test. It seems to me that, and I've used extension letters to put up Christmas requirements many times, leaning it against the eve of the house, in fact. And I don't think an extension letter is a very high-tech device. It's not simply a ladder that we're looking at, however. Well, it's an extension ladder. They all have this wobbly base. They all have that feature. And when you put the flying back or in front, that's the feature. There's another feature that holds the thing in extended position so it doesn't collapse. I don't see what's so esoteric about that. What's so esoteric about this case is not the ladder itself, but the foot assembly, which was a limited articulated foot assembly, had foot pads and cleats made out of polyvinyl chloride. I think it's not within a consumer's ordinary experience to know how that kind of a foot assembly is going to react under different circumstances. Well, I don't know about that, but that's the first thing you check when you get up on a ladder is whether it's going to slide on the ground or not. If you have any sense, I think that's the thing you're most concerned about. And what the chemical composition of the footing is, I'm not sure how important that is, but maybe it is. Go ahead. That was the claimed defect in the ladder was that the foot assembly was incorrectly designed. And I don't believe that's within the ordinary experience of a consumer, how to design a foot assembly and a foot pad on an extension ladder. Well, here the problem was that the cleat base of the thing was not in contact with the ground. Isn't that right? Not whatever was sitting on it, concrete or earth or something. That was the plainest theory of the case. But you can tell that pretty well when you get up on the ladder, I think. The plaintiff acknowledged looking at the ladder that the cleat was not entirely resting on the floor, but there was a gap there of, I think he said about half an inch to three-quarters of an inch, and yet proceeded to use the ladder anyway. Consumer expectation test also is applicable only when it is used in a reasonably foreseeable manner or its intended manner. The labels on the ladder itself make clear that the manner in which this extension ladder was to be used was with the fly to the rear. The plaintiff did not use it that way, so he certainly didn't use it in its intended manner. And as the district court pointed out, there was no evidence of what the reasonable foreseeable. That raises another question. This brochure, which was apparently objected to and was not admitted into evidence, as I understand it showed Model 3117 set up with a fly in front, just the way this plaintiff set it up. And isn't that evidence that it could be set up that way, that that's a foreseeable possibility that it would be set up that way? Except that brochure was not intended and never went to any consumer. It went to a retailer as a marketing advertising. But it didn't show the proper way to set up a ladder. Well, I mean, it showed that you could set it up this way. I mean, whether that's the right way or the wrong way. And the plaintiff admitted he never saw that ladder. But I think the important thing is that it never went to any consumer, so it does not show the reasonable use that a consumer would be expected to employ in this ladder. The plaintiff's third theory after the risk-benefit analysis, which requires expert testimony and the consumer expectation test, which I submit is not applicable in this case, is the failure to warn theory. I think, as this Court has pointed out, the plaintiff admitted that he did not read the warning labels. So there's no evidence from which one can conclude that a stronger warning would have made any difference. And, in fact, the plaintiff did not follow the instructions that were on the ladder labels. Going back to the reasonable use by a consumer of the ladder with the fly in the front, if you set up the ladder that way, there are some visual cues. Apart from the labeling, there are some visual cues which tell you that the ladder is not set up properly. We've already talked about the fact that the cleats don't rest flat on the floor in that position. Also, the rungs or the steps of the ladder, when it's set up in the correct position, it's in a D shape. The steps are, the rungs are flat, even with the ground, providing a nice level surface, and have some grooves in the steps which provide for a non-slip resistance. Isn't that a jury question? I mean, how significant those things are, what conclusions you ought to draw from them? Well, I think the point here is that there was no, and what the court said was there's no evidence of what the reasonable expectations of a consumer or the reasonable use that an ordinary consumer would put this ladder to. And that further supports the district court's conclusion there in that it's obvious from the way it's set up that that's the incorrect way, not only from the labels but from the visual cues that one gets when it sets up the ladder in that way. Because the district court excluded the testimony of Mr. Paul and concluded that this was not an appropriate case for the consumer expectation test and concluded that the failure to warn theory was not appropriate, given the fact that the plaintiff had not read the warnings that were there. It didn't matter whether or not the court erred in ruling that the plaintiff had waived a jury. The court was not, in granting the motion for judgment as a matter of law, was not weighing the evidence as the appellant suggests. Rather, it was performing its function, the same function that it would have performed had a jury been there, to determine whether or not there was sufficient evidence to go to a jury. And in this case, there wasn't. And the fact that the jury was held by the district court to have been waived, whether erroneous or not, would have made no difference and I think therefore is harmless error. The same result would have applied had the jury been sitting there listening to the plaintiff's case. And the same result that ultimately was obtained by this court when it granted the motion for judgment as a matter of law. Are there any other questions I'll conclude? I don't think so. Thank you.  Thank you, Your Honor. The arguments concerning the qualifications of the experts are weight issues. It was very clear that a big issue was how many times the plaintiff's expert had not passed the engineering exam. And the fact of the matter is, whether he passed the engineering exam or not, did not affect the kinds of opinions he was required to make in this case. He wasn't discussing the tensile strength of the polyvinyl chloride. He was talking about the mechanics of the accident. He had definitely enough experience and had testified in several other trials on these issues. So what the judge has to consider is whether the actual opinions that he is going to be giving are supported by the kind of experience that he had. And in this case, under 702, as a skilled witness, he was clearly qualified. Methodology is also a question, not of the scientific value of his testimony, but whether these two experts do the same kinds of testing. It's a question of whether the facts and the opinions match up. It was all about the angle and the design of the pivot foot. The foot assembly was incorrectly designed. And the consumer expectation test does not require the consumer to consider whether that design is correct. It only has to consider whether the consumer has a reasonable expectation that when they stand the ladder up in a foreseeable way that the foot will rest on the ground. Now, is your opponent correct when he says we can't, without the expert testimony, you can't apply the risk benefit test? Is that right? Well, I would disagree with that. As a practical matter, when you look at the design, when you look at the device at the foot of the ladder, which was in the court when we have pictures of it, it's a piece of metal and a hole, two pieces of metal, a hole and a bolt that goes through. Doing the ordinary things a consumer does around the house, they could decide that it might make practical sense to allow that foot to pivot at a little higher angle. Because if your door hinge doesn't allow the door to open 90 degrees, you can't get your chair through the door. It's a matter of looking at the device and applying your common sense. And I think in this case you could do that. It is also helpful on the risk benefit analysis to have the expert testimony. But I think that you can look at it even just as a consumer and see that it is a dumb design. The foreseeable use of the ladder doesn't depend on whether the fly is in the front or the back. And it depends on whether the angle is reasonable and whether the use is reasonable. The brochure shows that in the mind of the manufacturer that the use to which the ladder was put was foreseeable. And as soon as the manufacturer understands that it's foreseeable, then the manufacturer has an obligation to design it to fit the foreseeable use. So the brochure is very relevant on that issue. It doesn't matter whether the plaintiff saw it or not because foreseeability is an objective test. Counselors argued that a warning would not make any difference. That's not the law. It doesn't matter under the law if the plaintiff didn't read it because the plaintiff and all plaintiffs, all consumers, get the benefit of fair warning. It's a jury question. In this case, he did look at it. One last thing on visual cues by looking at the ladder. There aren't steps on this ladder. Steps would be a flat surface, and if that flat surface looks unsafe, maybe then a consumer wouldn't use that. But the so-called D rings in this case are not that clear. They're not flat surface with a rounded bottom. The jury could look at those rungs of the ladder and determine that it's not obvious from the shape of those rungs which way the ladder should be facing. Again, it's a question of fact. So we respectfully submit that you send it back, give us a jury, and let the judge reconsider the admissibility of the evidence. All right. Thank you, counsel. Both of you for the matter just argued, and the case will be submitted. And we'll next hear argument in Dixon v. Chase-Millan. Thank you.
judges: Browning, Cudahy, Rymer